**J & H REINFORCING AND STRUCTURAL ERECTORS, INC., Plaintiff,**

v.

**THE UNITED STATES, Defendant,**

and

**T–C, Inc., Defendant–Intervenor.**

**No. 01–546C.**

United States Court of Federal Claims.

Oct. 19, 2001.

---

for summary judgment. A contractor challenges award of a sealed-bid contract. The issue to be decided is whether the solicitation itself and/or the contracting officer, through other contracting personnel, misled plaintiff into believing that the solicitation was a special set-aside, thus preventing the contractor from filing a timely complaint in federal district court claiming that, at the outset, the solicitation should have been issued a set-aside.

## FACTS

### 1. *Regulatory background*

In 1997 Congress passed the Historically Underutilized Business Zone ("HUBZone") Act, Pub.L. No. 105–135, §§ 601–607, 111 Stat. 2592, 2627–36 (codified at 15 U.S.C. § 657a (1994 & Supp. V 1999)). The Act established the HUBZone program, the purpose of which "is to a provide Federal contracting assistance for qualified small business concerns located in historically underutilized business zones, in an effort to increase employment opportunities, investment, and economic development in those areas." 48 C.F.R. (FAR) § 19.1301(b) (2000). The Small Business Administration (the "SBA") is responsible for certifying qualified firms as HUBZone small business concerns ("HUBZone businesses"). FAR § 19.1303(a). Once a firm is HUBZone certified and its name appears on the SBA's List of Qualified HUBZone Small Business Concerns, the firm is eligible for HUBZone program preferences. FAR § 19.1303(b).

The HUBZone program provides three mutually exclusive measures to assist HUBZone businesses obtain federal contracts:[1] (1) HUBZone set-asides; (2) HUBZone sole source awards;[2] and (3) HUBZone price evaluation preferences. FAR §§ 19.1305–07. Under the set-aside procedures, where the contracting officer has a reasonable expectation that (1) two or more HUBZone businesses will submit offers, and (2) award will be made at a fair market price,

David J. Taylor, Washington, DC, for plaintiff.

Kevin W. McArdle, Washington, DC, with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant.

Daniel J. Donahue, Vienna, VA, for defendant-intervenor. David B. Vornehm, Kent Holland, and Claude P. Goddard, Wickwire, Gavin, P.C., of counsel.

## *OPINION*

MILLER, Judge.

This post-award bid protest is before the court after argument on defendant's motion

---

**1.** These procedures are applicable to Department of Agriculture acquisitions. FAR § 19.1302(a)(1).

**2.** Sole source contracts may be awarded under specific circumstances, which did not exist under the solicitation at issue. FAR § 19.1306(a).

the contracting officer "shall" set the acquisition aside, restricting competition to HUBZone businesses. FAR § 19.1305(a), (b). When a competition is set aside for HUBZone businesses, the contracting officer must so specify in the solicitation by inserting FAR clause 52.219–3, Notice of Total HUBZone Set–Aside. FAR § 19.1308(a).

Alternatively, the contracting officer may give HUBZone businesses price preferences. In full and open competitions, the "contracting officer shall give offers from HUBZone small business concerns a price evaluation preference by adding a factor of 10 percent to all offers, except ... [those from other small business concerns.]" FAR § 19.1307(a), (b). When acquisitions are made on the basis of full and open competition, the contacting officer must insert into the solicitation, the clause at FAR § 52.219–4, Notice of Price Evaluation Preference for HUBZone Small Business Concerns. FAR § 19.1308(b).

### 2. *The solicitation*

The facts are drawn from the administrative record and the pleadings on file. J & H Reinforcing and Structural Erectors, Inc. ("plaintiff"), is a HUBZone-certified construction company. On September 26, 2001, plaintiff filed this suit protesting the U.S. Department of Agriculture, Forest Service's (the "Forest Service") award of the Vesuvius Dam rehabilitation project to T–C, Inc. ("intervenor"). Plaintiff seeks preliminary and permanent injunctions halting contract performance and terminating the present contract, as well as an order awarding plaintiff the contract or an order mandating that the solicitation be re-bid and set aside for HUBZone businesses.

The Forest Service's rehabilitation project consists of several structural improvements to the Vesuvius Dam, including installation of roller compacted concrete on the dam's crest and downstream face, removal and replacement of dam topsoil, and removal and reconstruction of the dam's concrete spillway. The project also entails replacing two pedestrian bridges.

On April 2, 2001, the Forest Service published a notice in the Commerce Business Daily (the "CBD") announcing that the Wayne National Forest anticipated contracting for rehabilitation of the Vesuvius Dam. The notice described the project's requirements and stated: "All responsible sources may submit a bid for consideration." Also on April 2, 2001, the contracting officer sent a letter to several prospective offerors, which contained the same information sent out in the CBD, notifying the offerors of the anticipated solicitation. The letter stated: "All responsible offerors may receive an Invitation for Bids."

The Forest Service issued Solicitation R9–21–01–19 on April 23, 2001. The solicitation was consistent with the CBD notice in its work performance requirements. Box 25 of the solicitation indicated that competition would be pursuant to full and open competition and that the solicitation was not a sole-source procurement.

The solicitation referred to HUBZone set-asides and preferences. Solicitation section I incorporates into the contract specified FAR clauses. Section I.2 refers to FAR § 52.212–5, Contract Terms and Conditions Required To Implement Statutes or Executive Orders–Commercial Items, which incorporates by reference several other FAR clauses. As it appears in the solicitation, FAR § 52.212–5(a) states: "The Contractor shall comply with the following FAR clauses, which are incorporated in this contract by reference ..." and lists two FAR clauses. FAR § 52.212–5(b) states: "The Contractor shall comply with the FAR clauses in this paragraph (b) which *the Contracting Officer has indicated as being incorporated* in the contract by reference ...." (Emphasis added.) The solicitation then lists 28 FAR clauses, several of which, as plaintiff admits, are "mutually exclusive." Pl.'s Statement of Genuine Issues filed Oct. 10, 2001, ¶ 17. Included in this list are FAR § 52.219–3, Notice of HUBZone Small Business Set–Aside; FAR § 52.219–4, Notice of Price Evaluation Preference for HUBZone Small Business Concerns; FAR § 52.219–5, Very Small Business Set–Aside; and, FAR § 52.219–23, Notice of Price Evaluation Adjustment for Small Disadvantaged Business Concerns.

FAR § 52.212–5(b) was reprinted in its entirety in the solicitation, with the exception of one bracketed sentence, *"[Contracting Officer must check as appropriate.]*," which appears above the list of FAR clauses. Also not reproduced in the solicitation are the blank lines that appear in the regulation on which the contracting officer is to indicate which of the 28 clauses apply. The contracting officer thus is required to place a check on the lines next to those FAR clauses that she intends to incorporate into the contract. In the present solicitation, absent along with the instructive sentence and the blank lines are checks indicating that any of the listed FAR clauses has been incorporated.

Contracting Officer Mary E. Saint Louis held a pre-bid meeting on May 2, 2001, during which she was asked whether the project would be set aside for HUBZone businesses. Ms. Saint Louis responded, "No," without further explanation. Plaintiff did not attend this meeting.

Following the pre-bid meeting, the solicitation was twice amended. The first amendment, issued on May 7, 2001, contained two lists: a Planholders List and a list of those firms and individuals present at the pre-bid conference. The second amendment, issued May 11, 2001, added to the solicitation corrections to drawings and specifications, comments and answers to contractors' questions, and a revised schedule of items. The comments and answers attachment did not include the question regarding the solicitation's status as a possible HUBZone set-aside. Section B.2 of the revised schedule, however, stated: "A single award will be made to the low responsive, responsible bidder based on price and other factors. . . ."

After the Forest Service issued the solicitation, Ronald Hadsell, plaintiff's Estima-tor/Project Manager, obtained a bid form. According to his affidavit, because Mr. Hadsell was unclear as how to properly fill out the form, he telephoned the contracting officer's office for guidance. Ms. Saint Louis was unavailable and a technical administrator was unable to answer Mr. Hadsell's questions, so Mr. Hadsell spoke with Bonnie Smith, who defendant identifies as a Forest Service procurement clerk. Ms. Smith assisted Mr. Hadsell in filling out the bid as a HUBZone contractor. Throughout the process, Mr. Hadsell believed that the solicitation was a HUBZone set-aside. Donald Hadsell, plaintiff's President, also believed, when he reviewed and signed the bid form, that the solicitation was a HUBZone set-aside. Plaintiff did not learn until the bid opening that the contract in fact was not a HUBZone set-aside.

The contracting officer opened the bids on May 24, 2001. Only four companies competed. The winning bidder, Alan Stone Co., was disqualified, and the low bidder was determined to be T–C, Inc., a non-HUBZone company that bid $3,702,866.80. Plaintiff was the next low bidder, bidding $4,047,812.00.

The U.S. Department of Agriculture awarded Contract No. 50–3434–1–1532 to T–C, Inc., on June 27, 2001. On June 6, 2001, plaintiff filed a bid protest with the General Accounting Office which was dismissed on August 7, 2001.[3] *J & H Reinforcing & Structural Erectors, Inc.*, 2001 Comp. Gen. ¶ ___ (B–288306, Aug. 7, 2001).

## DISCUSSION

### 1. *Jurisdiction and standard of review*

The Tucker Act, 28 U.S.C. § 1491(b)(1) (1994 & Supp. V 1999), allows a protestor to challenge in the Court of Federal Claims

---

**3.** Plaintiff's claim to the GAO, filed July 6, 2001, differed from its claim here. In its GAO protest, plaintiff characterized the solicitation as "a full and open competition contract" and therefore claimed that it was improperly awarded because plaintiff was not given a 10% price preference over T–C, Inc. On July 30, 2001, plaintiff submitted a supplemental response with a new argument. Plaintiff claimed that the solicitation should have been a HUBZone set-aside, not a full and open competition with a price preference, and that the contracting officer erred by deleting the *"[Contracting Officer must check as appropriate.]"* line ·and the check lines from FAR § 52.212–5(b). The GAO dismissed the case on the ground that plaintiff was not entitled to the 10% preference because T–C, Inc., is a small business concern and the preference is given to a qualified bidder only over non-small business concerns. The GAO also stated that the deletion of parts of FAR § 52.212–5 rendered the solicitation ambiguous, but that plaintiff was required to protest the solicitation on that basis prior to bid opening.

"the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."

The court evaluates the procuring agency's conduct to determine whether it was arbitrary and capricious. *See* .28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."). To prevail under the arbitrary and capricious standard, a frustrated offeror is required to establish that (1) the Government officials involved in the procurement process were without a rational and reasonable basis for their decision, or (2) the procurement procedure involved a clear and prejudicial violation of applicable statutes and regulations. *See Statistica, Inc. v. Christopher,* 102 F.3d 1577, 1581 (Fed.Cir. 1996); *Ellsworth Assocs., Inc. v. United States,* 45 Fed.Cl. 388, 392 (1999), *appeal dismissed,* No. 00–5028 (Fed.Cir. Mar. 6, 2001).

■ Defendant takes the position that plaintiff's protest is untimely. The law is unequivocal on this point: Because plaintiff is challenging the type of solicitation, plaintiff's protest must be filed before bid opening. *Novell, Inc. v. United States,* 46 Fed.Cl. 601, 615 (2000). Plaintiff's principal factual contention is that FAR § 52.212–5(b) was imperfectly incorporated into section I.2 of the solicitation and that, consequently, the solicitation's omissions misled plaintiff into believing that it was bidding on a HUBZone set-aside project. Plaintiff also contends that the contracting officer and other contracting personnel frustrated plaintiff's timely protest of the solicitation terms. Defendant argues that, as a matter of law, the solicitation does not raise a material fact as to whether the bidding process would be a full and open competition.

Plaintiff charges that the contracting officer violated the following statutes and regulations: 15 U.S.C. §§ 631–657c (1994 & Supp. V 1999) (Chapter 14A–Aid to Small Business); FAR § 19.1305 (HUBZone set-aside procedures); FAR § 10.001, 10.002 (policy and procedures for conducting market research used to ensure most suitable acquisition, distribution, and support methods in procuring supplies and services); FAR § 52.104(a) (contracting officer must not modify FAR provisions and clauses unless authorized under FAR); FAR § 52.252–5(a) (where FAR provision used with authorized deviation, contracting officer must insert "Deviation" after provision date).

Although the parties agree that plaintiff cannot challenge a solicitation's terms in the Court of Federal Claims, plaintiff nonetheless invokes jurisdiction on the theory that (1) the omissions in transposing FAR § 52.212–5(b) to the solicitation constitute prohibited modifications and/or deviations resulting in an ambiguous solicitation; (2) the contracting officer's conduct violated applicable procurement regulations or otherwise circumvented the Government's duty to provide full and open competition consistent with competitive bidding procedures, 41 U.S.C. § 253(a)(1)(A) (1994); *see AT & T Communications, Inc. v. Wiltel, Inc.,* 1 F.3d 1201, 1205 (Fed.Cir.1993); and (3) the contracting officer and her agents acted in bad faith.

### 2. *Plain meaning*

■ Whether a solicitation is ambiguous is a question of law. The court's examination begins with the plain language of the contract. *See Textron Def. Sys. v. Widnall,* 143 F.3d 1465, 1468 (Fed.Cir.1998). If the contract language is unambiguous, the court's inquiry is at an end, and the plain language of the contract is controlling. *See id.* at 1469. In its reading, a court must interpret the contract "as a whole" in order to "effectuate its spirit and purpose." *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir. 1991) (quoting *Arizona v. United States,* 216 Ct.Cl. 221, 235, 575 F.2d 855, 863 (1978)).

FAR § 12.301(b)(4) requires a contracting officer to insert the text of FAR § 52.212–5 into commercial procurement solicitations. FAR § 52.212–5 "incorporates by reference only those clauses required to implement provisions of law or executive orders applicable to the acquisition of commercial items." FAR § 12.301(b)(4). FAR § 52.212–5(b) enumerates 28 laws and instructs the contracting officer to indicate which clause(s), if

any, implicitly are incorporated into the specific solicitation by checking a blank space, "___", next to each applicable clause. The provision reads: "The Contractor shall comply with the FAR clauses in this paragraph (b) *that the Contracting Officer has indicated as being incorporated in this contract ....*" (Emphasis added.)

Plaintiff faults the contracting officer for two crucial modifications or deviations. One is the omission of the bracketed sentence. "*[Contracting Officer must check as appropriate.]*." The brackets themselves indicate that the included material is to be omitted, or so the English lexicology involved in construing a regulation would dictate. However, defendant did not establish that the bracketed language is to be omitted when transposed into a solicitation, so the court accepts plaintiff's assertion that the contracting officer deleted an instruction that was intended to be included. This reading bolsters plaintiff's argument that the omission was misleading in that, had the bracketed sentence been included, plaintiff would have been aware that no affirmative indication was present that any of the enumerated 28 clauses applied. The contracting officer further fueled plaintiff's protest by omitting the blank lines upon which she would have indicated whether a given corresponding clause was applicable to the solicitation. Plaintiff contends that these omissions led it to interpret the solicitation as a HUBZone set-aside.

■ Although defendant candidly admitted at oral argument that clause FAR § 52.212–5(b), as it appears in the solicitation, was "defective," the court must reject plaintiff's position that any modification or deviation with respect to reproducing a procurement regulation in a solicitation is actionable as violating the two procurement regulations that prohibit such changes, except where the FAR authorizes a modification or where a deviation is noted prominently. Were plaintiff's novel proposition accepted, a bidder would be absolved of any duty to inquire as to apparent discrepancies. A contracting officer does not warrant that a solicitation is free from error, but, in order to invoke either FAR § 52.104(a) (disallowing modifications) or FAR § 52.252–5(a) (disal-

lowing deviations), the change must be material and not so patently ambiguous as to put the bidder on duty to inquire.

Plaintiff concluded that, because the "Notice of HUBZone Small Business Set–Aside" clause was one of the 28 enumerated clauses, it was incorporated into the solicitation. Not only does such a reading ignore the affirmative indication required by FAR § 52.212–5(b), but it leads to the illogical result that the remaining clauses also were incorporated—one of which plaintiff has admitted is mutually exclusive with a HUBZone set-aside.

■ Plaintiff's interpretation, which ignores mutually exclusive clauses, presents a patent ambiguity regarding which clauses, if any, apply to the solicitation. Contractors are expected to know FAR provisions. *General Eng'g & Mach. Works v. O'Keefe*, 991 F.2d 775, 780 (Fed.Cir.1993). When a contractor confronts a patent ambiguity, the contractor has a duty to inquire into the correct meaning of the contract prior to submitting a bid. *See Interstate Gen. Gov't Contractors, Inc. v. Stone*, 980 F.2d 1433, 1435 (Fed.Cir.1992) (citing *Newsom v. United States*, 230 Ct.Cl. 301, 303, 676 F.2d 647, 649 (1982)). "The existence of a patent ambiguity in the contract raises the duty of inquiry, regardless of the reasonableness of the contractor's interpretation." *Id.* at 1434–35 (quoting *Fortec Constructors v. United States*, 760 F.2d 1288, 1291 (Fed.Cir.1985)). If the bidder fails to inquire, the contract will be construed against it. *See Community Heating & Plumbing Co. v. Kelso*, 987 F.2d 1575, 1580 (Fed.Cir.1993). Plaintiff's interpretation that the mere presence of the clause on HUBZone set-asides identified the contract as a HUBZone set-aside results in an inconsistency with the mutually exclusive provision regarding HUBZone preference adjustments in competitively bid contracts. At a minimum this inconsistency should have prompted plaintiff to seek clarification. *See Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 997 (Fed.Cir.1996) (patent ambiguity is one that is obvious, glaring, or substantial). Plaintiff has offered no evidence that it brought this interpretation of a patent inconsistency to the contracting officer's attention.

### 3. *Representations by contracting personnel*

Plaintiff relies on alleged oral representations or misrepresentations by contracting personnel that led plaintiff to believe that it was bidding on a HUBZone set-aside. Ronald Hadsell, plaintiff's Estimator/Project Manager, avers:

> 4. We were informed that this job would be bid as a HUBZone contract.
>
> 5. When we got the bid documentation, the information which needed to be filled in was not clear to me, because it did not fully correspond to the documents we thought should be part of the bid package, so I called the contact number to confirm how to bid this job as a HUBZone set aside.

Aff. of Ronald Hadsell, Sept. 20, 2001, ¶¶ 4–5.

■ Plaintiff's counsel at argument ascribed the source of the information in paragraph 4 to another contractor,[4] so that averment is immaterial. In any event, unidentified oral statements are insufficient to bind the Government. *See Henry v. United States,* 870 F.2d 634, 637 (Fed.Cir.1989) (oral statements non-binding); *see also Boraiko v. United States,* 146 Ct.Cl. 814, 817 (1959) (plaintiff's testimony concerning unidentified officer should not have been admitted as incompetent). Paragraph 5 does not state that a representative of the contracting officer led plaintiff to believe that the solicitation was a set-aside; rather, it states that plaintiff was assisted to bid as a HUBZone contractor.

■ As plaintiff's counsel also made clear during oral argument, the heart of plaintiff's argument is that it believed the project to be a HUBZone set-aside. ("At all times in this process I believed that this project was a HUBZone set aside job." R. Hadsell Aff. ¶ 7.) This penumbral belief, however, is insufficient to establish that either the solicitation document or authorized contracting personnel so represented it. It cannot be gainsaid that none of plaintiff's affiants states that they interpreted FAR § 52.212–5(b) as it appears in the solicitation to inform them that the solicitation was a HUBZone set-aside, nor does any one of them aver that a contracting officer representative told him that the solicitation was a HUBZone set-aside.

Even assuming that government contracting personnel told plaintiff that the solicitation was a HUBZone set-aside, FAR § 52.214–6 requires:

> Any prospective bidder desiring an explanation or interpretation of the solicitation, drawings, specifications, etc., *must request it in writing* soon enough to allow a reply to reach all prospective bidders before the submission of their bids. *Oral explanations or instructions given before the award of a contract will not be binding.* Any information given a prospective bidder concerning a solicitation will be furnished promptly to all other prospective bidders as an amendment to the solicitation, if that information is necessary in submitting bids or if the lack of it would be prejudicial to other prospective bidders.

(Emphasis added.) This requirement was replicated in section L.9 of the solicitation entitled "Inquiries": "Inquiries and all correspondence concerning this solicitation should be submitted in writing to the Contracting Officer. Offerors should contact only the Contracting Officer issuing the solicitation about any aspect of this requirement prior to contract award." Plaintiff's concerns were never addressed in writing to the contracting officer.

Plaintiff also relies on advice given by Ms. Smith, the procurement clerk: "Since the Contracting Officer was unavailable and the Technical Administrator could not answer the question, I was given to a Bonnie Smith who, when I asked whether this was a HUBZone contract, directed me in filling out the information to complete a HUBZone bid as a HUBZone contractor." R. Hadsell Aff. ¶ 6. Mr. Hadsell states that Ms. Smith walked him through filling out information relating to plaintiff's status as a HUBZone small business. Even construing these state-

---

4. No other bidder questioned whether the solicitation was a HUBZone set-aside. *See Community Heating & Plumbing,* 987 F.2d at 1579 (evidence of other bidders' interpretations considered in determining reasonableness of contractor's interpretation).

ments as questions to the contracting officer's representative about the nature of the procurement, they reflect questions that by regulation must be submitted in writing.

Occasionally the court is bereft of insight as to how a procurement regulation furthers the goal of a meaningful solicitation. Such is not the case here. The regulation was issued to avoid precisely the situation in which plaintiff, defendant, and intervenor, find themselves—reading the tea leaves of recalled utterances to ascertain if the contracting officer or her representatives made a statement that would bind the Government.

Plaintiff urges that if the case proceeded on the merits, the legitimacy of plaintiff's claims would be revealed, *i.e.,* the contracting officer erred, and thereby violated an applicable procurement regulation, when she failed to issue the solicitation as a HUBZone set aside. The applicable legal standards do not permit the court to broaden the inquiry without plaintiff's having overcome defendant's objection that the protest is untimely. Argument by counsel, unsupported by affidavits, is unavailing. *See Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831, 836 (Fed.Cir.1984); *see also Levi Strauss & Co. v. Genesco, Inc.,* 742 F.2d 1401, 1404 (Fed.Cir.1984) (holding argument and assertions of counsel cannot substitute for factual statements under oath establishing a genuine issue of material fact). The record does not raise a genuine issue of material fact as to whether the solicitation itself or the contracting officer, through her representatives, was misleading about the nature of this procurement.

### 4. *Other factors*

Lastly, plaintiff has proved irreparable harm because it stands to lose profits from the contract as awarded. The balancing of interests, however, tilts heavily to T–C, Inc., which has been performing the contract since August 20, 2001. Plaintiff did not initiate the suit until September 26, 2001. Finally, the public's interest also favors timely initiation of legitimate protests. *See Glaxo Group Ltd. v. Ranbaxy Pharmaceuticals, Inc.,* 262 F.3d 1333, 1335–36 (Fed.Cir.2001) (setting forth factors when considering injunctive relief).

The court has given its most careful attention to all of the grounds argued by plaintiff, but finds them without merit.

### CONCLUSION

Accordingly, based on the foregoing,

1. The September 28, 2001 Declarations of Mary E. Saint Louis and Susan L. Peterson are stricken from the Administrative Record.

2. Defendant's motion for summary judgment is granted, and the Clerk of the Court shall enter judgment for defendant.

**IT IS SO ORDERED.**