**ALTOS FEDERAL GROUP, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

and

**Intelistaf Healthcare, Inc., Intervenor.**

No. 04–936C.

United States Court of Federal Claims.

June 10, 2004.

James Stephen DelSordo, Washington, D.C., attorney of record for plaintiff.

Jonathan Reid Prouty, Department of Justice, Washington, D.C., with whom was Assistant Attorney General Peter D. Keisler, for defendant. David M. Cohen, Director, and William F. Ryan, Assistant Director.

Dennis Foley, U.S. Department of Veterans Affairs, of counsel.

Paul Farid Khoury, Washington, D.C., attorney of record for intervenor. Matthew S. Simchak and Derek A. Yeo, of counsel.

## OPINION

FUTEY, Judge.

This bid protest case comes before the court on plaintiff's request for a temporary restraining order.[1] Plaintiff, Altos Federal Group, Inc., filed a bid protest with the United States General Accounting Office (GAO) on May 25, 2004, with respect to a contract for nursing services awarded under Request for Quotations (RFQ) No. 673–90F–04–003–A. The protestor alleges that the United States Department of Veterans Affairs (VA) did not perform its evaluation of the bidders according to the standards set forth in the solicitation.

Upon the filing of the GAO protest, an automatic stay was imposed pursuant to the Competition In Contracting Act (CICA). 31 U.S.C. § 3553(d)(3). As a consequence, the Contracting Officer (CO) responsible for the RFQ issued a stop work order on May 27, 2004, to the successful bidder, Intelistaf Healthcare, Inc., the intervenor in this case. On May 28, 2004, the Deputy Assistant Secretary for Acquisition and Material Management (Deputy Assistant Secretary) for the VA decided to override the automatic stay in the "best interests of the United States." See *id.* § 3553(d)(3)(C).

The only issue before the court is the validity of the agency decision to override the automatic stay. The merits of plaintiff's bid protest remain with the GAO.

## Factual Background

The solicitation process at issue in this case involves nursing services at Lackland Air Force Base (Lackland) in San Antonio, Texas. Recently, these services were provid-

---

1. This opinion elaborates on the bench ruling invalidating the United States Department of Veterans Affairs' (VA) override determination, issued after oral argument on June 4, 2004.

ed by three contractors, plaintiff, Spectrum Healthcare Services, and StarMed Staffing Group. The contract for those services expired on September 30, 2003, and performance was extended until March 31, 2004. According to defendant, the VA had no authority to extend the performance period under the contract.[2]

The VA continued to procure the services under the Federal Supply Schedule System(FSS) until May 28, 2004. The FSS allows the government to order an indefinite quantity of services from contractors who have FSS contracts, and when services required by the agency are listed on the contractor's pre-approved FSS schedule.

Intervenor was to begin providing services under the new contract on June 1, 2004, but was prevented from beginning work due to the stop work order. When the Deputy Assistant Secretary directed that the automatic stay be overridden in the best interests of the government, it was allegedly done in light of the fact that "there was no other basis for continuing the old contract."[3]

Plaintiff argues, however, that:

[T]he VA's documentation [justifying the override] is wholly inadequate and is nothing more than a statement that the VA facility at Lackland Air Force Base cannot provide nursing resources from in-house personnel .... There is no explanation or assertion as to why the services cannot be provided under the existing contracts held by [plaintiff and other previously operating contractors] since the new contract ... contains no additional work or tasks not present under existing contracts.[4]

Plaintiff contends, therefore, that under the automatic stay, the status quo should be maintained and the existing contracts should be extended until the GAO renders a decision. Further, it argues that the determination and finding justifying the VA's override of the stay does not provide a rational basis. Defendant counters that it did not possess any means of maintaining the status quo

since plaintiff could not have legally continued to provide the services it required under the FSS. In fact, this contention was made *post hoc* by defendant and is not expressly stated in the contemporaneous determination and findings adopted as the basis of the override by the Deputy Assistant Secretary.[5]

## Discussion

This court has jurisdiction under 28 U.S.C. § 1491(b) to review an agency's decision to override an automatic stay of contract performance under 31 U.S.C. § 3553. *RAM-COR Servs. Group v. United States,* 185 F.3d 1286, 1291 (Fed.Cir.1999); *Keeton Corrections, Inc. v. United States,* 59 Fed.Cl. 753, 755 (2004); *PGBA, LLC v. United States,* 57 Fed.Cl. 655, 658 (2003); *SDS Int'l, Inc. v. United States,* 55 Fed.Cl. 363, 364 (2003).

The court may not "substitute its judgment for that of the agency," *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), but must consider whether the override decision was arbitrary, capricious, or otherwise not in accordance with law. 28 U.S.C. § 1491(b)(4); *PGBA,* 57 Fed.Cl. at 657. The question, therefore, is whether the agency considered the relevant factors and made a rational determination. See *Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1057–58 (Fed.Cir.2000).

*Post hoc* declarations made by the CO indicate that the basic justification for the override was the belief that continued performance by plaintiff was unlawful and, therefore, there were no legal means of maintaining the status quo. The court finds this dubious, since defendant had been procuring the required services from plaintiff under the FSS for nearly two months between the end of plaintiff's contract and the award of the new contract to intervenor. In order to explain this conflict, the CO states, that "using the FSS System for the remainder of the services provided by [plaintiff]

---

2. Defendant's Response To Plaintiff's Request For A Temporary Restraining Order (Def.'s Response) at 2.

3. *Id.* at 4.

4. Plaintiff's Memorandum In Support Of Plaintiff's Motion For Preliminary Injunction at 4–5.

5. Complaint, Exhibit (Exh.) 1.

during this two month period had been improper, although I had not realized it at the time."[6] A June 2, 2004, declaration by Brigadier General Charles B. Green likewise relies on the belief of the CO.[7] A revised declaration by the CO, however, asserts that his previous understanding of the facts was erroneous.[8] Defendant's final position is that plaintiff was capable of lawfully performing more tasks than defendant thought possible on May 28, 2004, but that it may still be unable to provide some required services.

Plaintiff disputes the judgment of the CO, contending that it is fully capable of performing all of the services requested by the VA under its current FSS schedule. Further, it avers that the services that defendant alleges plaintiff is unqualified to perform could lawfully be performed by a subcontractor and, therefore, no impediment exists to restoring the status quo as of May 31, 2004.

An agency's decision may be arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem [or] offered an explanation for its decision that runs counter to the evidence before the agency ...." *Keeton,* 59 Fed.Cl. at 755 (quoting *Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). The court has previously held that the standards "by which to review the 'best interest' finding" include "whether the factors relied upon by the contracting official were relevant or, conversely, whether factors relevant to the determination were ignored." *PGBA,* 57 Fed.Cl. at 659.

Contrary to a case in which conclusions of the agency are "rational and supported by the record," *Sierra Military Health Servs., Inc. v. United States,* 58 Fed.Cl. 573, 581 (2003), the purported basis to justify the override decision was not mentioned at all in the May 28, 2004, override memorandum approved by the Deputy Assistant Secretary.[9] There is only one mention in the documents supporting the override decision that reflects a concern with plaintiff's legal capacity to perform. A May 26, 2004, memorandum by Brigadier General Green includes the statement that the "current purchase order arrangement with three different contractors expires on May 31, 2004 with no legal extension available."[10] The memorandum provides no support for that assertion. Further, the memorandum goes on to imply in error that maintaining the status quo would involve a five-month delay. These facts alone indicate that the agency has "offered an explanation for its decision that runs counter to the evidence before the agency ...." *Motor Vehicle Mfrs.,* 463 U.S. at 43, 103 S.Ct. 2856.

Further, the CO's declaration regarding plaintiff's alleged inability to lawfully receive further FSS orders states that plaintiff's FSS "contract had included [Special Item Numbers] for only one of the many nursing services provided in the new nursing contract ...."[11] It is noted that whether plaintiff was capable of providing all the necessary services under the new contract is irrelevant. Section 3553(d)(3)(A)(i) states that when a bid protest is filed challenging the award of a contract "the contracting officer may not authorize performance of the contract to begin while the protest is pending." As applied to the current case, the contract referred to by the statute is the one awarded to intervenor. It is unnecessary, therefore, to consider whether plaintiff is capable of performing the services required by the new contract. The question relevant to maintaining the status quo under the stay is whether plaintiff is capable of lawfully providing the same services it has been providing under the old contract and under the temporary system of FSS orders in place for the past two months.

6. Def.'s Response, Exh. 1 (Negron Declaration) at 2.

7. *Id.,* Exh. 2 (Brigadier General Green Declaration).

8. Supplemental Declaration by Jose A. Negron (Supp. Dec.) at 2–3.

9. Complaint, Exh. 1 (DVA Best Interests Memorandum).

10. Brigadier General Green Declaration, Attachment 1.

11. Supp. Dec. at 1.

Elsewhere the CO states that because plaintiff "was not qualified under the FSS System for all but one of the nursing services provided by the *old and new* nursing contracts, the continued use of the FSS System as a bridge between the schedules was no longer a means to maintain the *status quo.*"[12] Assuming *arguendo* that only concerns about plaintiff's legal capacity to perform the services it had already been performing were the basis for the override decision, the court believes "factors relevant to the determination were ignored." *PGBA,* 57 Fed.Cl. at 659.

The CO has said that "[t]hree factors contributed to [his] mistaken belief about the status of [plaintiff's] FSS contract."[13] The first was that the government Web site showing plaintiff's FSS schedule was inaccurate. The CO alleges that this level of investigation is presumed reasonable by FAR § 8.404(b)(2). Second, a worksheet provided for unrelated purposes to the CO reflecting plaintiff's FSS schedule was inaccurate. Third, plaintiff made no reference in its solicitation response for the new nursing contract to the fact that it updated its FSS schedule.

FAR § 8.404(b)(2) states that "[b]efore placing an order, [the CO should] consider reasonably available information about the supply or service offered . . . by using the 'GSA Advantage!' on-line shopping service [Web site], or by reviewing the catalogs or pricelists of at least three schedule contractors." It is clear that one source of reasonably available information is the GSA Web site. In this case, however, plaintiff had been performing the services at issue for years under the old contract and for two months under the temporary FSS order system.

If the CO detected a mistake in his previous judgment about plaintiff's qualification to receive orders under the FSS he could not continue to award them. To rely on this alleged fact, without further verification, in justifying the Deputy Assistant Secretary's decision to override the automatic stay, however, ignores a relevant factor of the determination. Relying merely on the Web site and information at hand for other purposes, in this context, borders on capricious. A more thorough check, or even a phone call to plaintiff, could have settled the concern authoritatively.

Furthermore, plaintiff alleges that had it in fact been unable to perform certain services, a contention which it disputes and which appears doubtful based on the record before the court, the deficiency could have been remedied within one day. Defendant argues that one day might not be accurate, but does not dispute it might occur in two days or a short period of time. Under any circumstances, the time frame is nothing at all like the implied five months indicated in Brigadier General Green's memorandum in support of the override decision. Defendant argued at the hearing that "[w]e have to . . . make contractual decisions based on what is authorized as opposed to what we think will later become authorized."[14] That is true but beside the point. The alleged basis of the override is that the status quo could not be legally maintained. This appears incorrect on two grounds: first, plaintiff asserts it is able to provide all the services it has previously performed, either on its own or with subcontractors. Second, had plaintiff been alerted to the alleged basis of the override shortly after the automatic stay was imposed, it would have been possible to demonstrate the actual facts or remedy a deficiency by timely modifying its FSS schedule prior to June 1, 2004. In either case, vital nursing services would have been maintained at Lackland without resorting to an override of the automatic stay.

On the basis of the record before the court and the arguments made at the June 4, 2004, hearing, the court determines that the VA's decision to override the automatic stay is unsupported by the evidence, without rational basis and, therefore, cannot be sustained. Accordingly, the status quo as of May 31, 2004, must be maintained.[15]

12. Negron Declaration at 2–3 (emphasis added).

13. Supp. Dec. at 2.

14. Transcript of Oral Argument at 38–39.

15. The court strongly recommends that the parties request an expedited schedule from the GAO to resolve the bid protest underlying this case.

*Conclusion*

For the above-stated reasons, the VA's decision to override the automatic stay mandated by 31 U.S.C. § 3553(d)(3) is INVALID. The Clerk of the Court is hereby directed to enter judgment DECLARING the override to be invalid and to be of no effect. The automatic stay, therefore, remains in effect and the request for a temporary restraining order is MOOT. No costs.

IT IS SO ORDERED.