**INTERSTATE GENERAL GOVERN-
MENT CONTRACTORS, INC.,**
Appellant,

v.

**Michael P.W. STONE, Secretary
of the Army, Appellee.**

No. 92–1079.

United States Court of Appeals,
Federal Circuit.

Dec. 3, 1992.

Glen W. Clark, Jr., Palmer, Howard & Clark, Austell, Ga., argued, for appellant.

Franklin E. White, Jr., Attorney, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued, for appellee. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. Also on the brief was Major Robert L. Duecaster, Dept. of Army, of counsel.

Before NIES, Chief Judge, SKELTON, Senior Circuit Judge, and LOURIE, Circuit Judge.

LOURIE, Circuit Judge.

Interstate General Government Contractors, Inc. (IGGC) appeals from the August 8, 1991 decision of the Armed Services Board of Contract Appeals, ASBCA No. 42742, 91–3 B.C.A. (CCH) ¶ 24,280, denying IGGC's motion and granting the government's cross-motion for summary judgment on IGGC's claim for an equitable adjustment of $48,186.70. Because IGGC failed to seek clarification of a patent ambiguity in the contract at issue prior to bidding, we affirm.

## BACKGROUND

On September 24, 1990, IGGC was awarded contract no. DABT11–90–C–0042 for the replacement of heating and air conditioning equipment and the installation of an air handling system in three buildings at Fort Gordon, Georgia. On November 2, 1990, the contracting officer rejected IGGC's Material Approval Submittal which indicated an intent to use conventional motor starters instead of more expensive variable speed fan power controllers (VSPCs). IGGC then sought clarification of the contract requirements for the first time by letter dated November 20, 1990. In response, the contracting officer advised IGGC that it was required to provide VSPCs in accordance with the contract specifications.

Accordingly, IGGC installed VSPCs and related equipment at an additional cost of $48,186.70, for which it filed a claim for an equitable adjustment. The contracting officer denied the claim and IGGC appealed to the Board. The Board rejected IGGC's argument that the contract called for the installation of motor starters, concluding instead that the contract required VSPCs. The Board denied IGGC's motion for summary judgment and granted the government's cross-motion for summary judgment.

On appeal to this court, IGGC contends that the Board's interpretation of the contract was erroneous. IGGC argues that because the contract makes numerous references to motor starters and VSPCs, it is ambiguous. IGGC maintains that any ambiguity in the contract must be construed against the drafter, the government, and that IGGC's interpretation was a reasonable one. On the other hand, the government contends that the contract clearly and unambiguously required the installation of VSPCs.*

## DISCUSSION

■ This appeal is governed by the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1988), which provides that "the decision of the agency board on any question of law shall not be final or conclusive" and its findings of fact are reviewed for substantial evidence. 41 U.S.C. § 609(b) (1988). Interpretation of a contract is a legal question that we review *de novo. Triax–Pacific, A Joint Venture v. Stone,* 958 F.2d 351, 353 (Fed.Cir.1992). However, in view of the Board's considerable experience and expertise in interpreting government contracts, its interpretation is given careful consideration. *Id.*

■ We disagree with the Board that the contract clearly required VSPCs. We agree with IGGC that the contract at issue is ambiguous regarding the obligation to install motor starters or VSPCs. Taken as a whole, the contract fails to express clearly the intention of the parties. The law is well settled that ambiguities in a contract are to be resolved against the drafter of the contract. *See United Pacific Ins. Co. v. United States,* 497 F.2d 1402, 1407, 204 Ct.Cl. 938 (1974). "Furthermore, it is well established that if a [contract] is ambiguous and the contractor follows an interpretation that is reasonable, this interpretation will prevail...." *Id.*

■ However, an exception to this general rule of *contra proferentem* exists when the ambiguity is patent. "The exis-

* The parties do not dispute that IGGC relied on its claimed interpretation in submitting its bid.

*See Fruin–Colnon Corp. v. United States,* 912 F.2d 1426, 1430 (Fed.Cir.1990).

tence of a patent ambiguity in the contract raises the duty of inquiry, regardless of the reasonableness of the contractor's interpretation." *Fortec Constructors v. United States,* 760 F.2d 1288, 1291 (Fed.Cir.1985). That duty requires the contractor to "inquire of the contracting officer the true meaning of the contract before submitting a bid." *Newsom v. United States,* 676 F.2d 647, 649, 230 Ct.Cl. 301 (1982). The existence of a patent ambiguity is a question of contract interpretation which we decide *de novo* on a case-by-case basis. *See id.* 676 F.2d at 649–50.

The record clearly establishes that this contract is ambiguous and that the ambiguity is patent. The parties do not dispute that there are numerous references to both motor starters and VSPCs throughout the contract. For example, several provisions indicate that motor starters were required. Paragraph 8 of Section 15A1 states that "[e]lectrical motor-driven equipment specified shall be provided complete with motor, motor starter, and controls." Paragraph 11.2.3 further provides that "[m]otor starters shall be magnetic type with general-purpose enclosure." Additionally, Control Sequence note # 8 of the contract drawings states "[s]tatic pressure sensor shall modulate inlet guide vane controller for fan modulation" and the EMCS I/O Table appearing on the drawings contains the entry "Supply Air Fan Control"; both of these are considered by the parties to be references to motor starters. The contract drawings themselves also indicate the use of motor starters.

On the other hand, the contract contains twenty-one provisions under Paragraph 11.-2.4, headed "Variable Speed Fan Power Controllers: Variable–Speed Power Controllers (VSPC)," referring specifically to VSPCs. Moreover, it is undisputed that Paragraph 13.13.1, "Sequence of Control," which provides that the "Static pressure sensor shall modulate motor speed controller for fan modulation," and the EMCS I/O Table entry "Supply Air Fan Speed Control" are references to VSPCs.

To the extent that the references to motor starters and VSPCs were intended to refer to different types of devices, it is not clear which was required to be used. The government argues on appeal that a variable speed fan power controller may be considered a type of motor starter and that references in the contract to motor starters can be interpreted as referring to VSPCs. Although the Board rejected IGGC's argument that variable speed fan power controllers and motor starters are mutually exclusive, it also stated that their functions are not identical and thus that they are not the same. The record additionally shows that the contracting officer recognized that the references in the contract to both motor starters and VSPCs were "discrepanc[ies]," presumably meaning that such references were inherently inconsistent. A reasonable finder of fact, viewing the contract as a whole, could not find that references to motor starters and VSPCs were intended to refer to the same type of device. The irreconcilable conflict created by the presence of numerous provisions referring to motor starters and VSPCs establishes both that there is an ambiguity and that it is patent. *See Beacon Constr. Co. of Mass. v. United States,* 314 F.2d 501, 504, 161 Ct.Cl. 1 (1963) (a patent ambiguity may manifest itself as an "obvious omission, inconsistency or discrepancy of significance").

Another indication of the existence of patent ambiguity is Paragraph 14.2, "Flow Control." The provision is drafted in such a manner as to allow the contracting parties to choose among alternative terms. The Paragraph recites in pertinent part:

> The air flow control center shall provide output [signals] to the [volume control damper] [fan inlet vanes] [fan speed control] [fan variable switch] actuators to provide the required air flow rates.

Inexplicably, the choice between "fan inlet vanes" (a reference to motor starters) and "fan speed control" (a reference to VSPCs) was never made. Finally, there is dispute surrounding the vague term "fan power controller" in Paragraph 11.1 of Section 15A1, which is further evidence of patent ambiguity.

The contract before us is a poor attempt by the parties to memorialize their intentions regarding the installation of an air handling system. Not only is the contract internally inconsistent and confusing, it even contains several "boiler plate" provisions relating to plumbing and piping requirements that are completely irrelevant to the intended task. Although we do not wish to penalize a contractor because of a contract that was poorly drafted by the government, the very fact that this contract is patently ambiguous places a burden on the contractor to seek clarification of its rights and obligations before bidding. The ambiguity here is *"so* glaring as to raise a duty to inquire." *Newsom,* 676 F.2d at 650. IGGC failed to do so and it must therefore lose on its claim for an equitable adjustment. *See Beacon Constr. Co.,* 314 F.2d at 504.

## CONCLUSION

We conclude that the confusion created by the conflicting references to motor starters and VSPCs renders the contract patently ambiguous. Because IGGC did not attempt to clarify its obligations under the contract at any time prior to bidding, it is precluded from recovering on its claim. Accordingly, the decision of the Board is affirmed.

AFFIRMED.