**H.B. ZACHRY COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 91–1585C.**

United States Court of Federal Claims.

April 5, 1993.

Stephen J. Johnson, Washington, DC, for plaintiff.

A. Lauren Springer Moore, Washington, DC, with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on defendant's motion for summary judgment. Plaintiff argued that genuine issues of material fact preclude allowance of the motion and requested oral argument on the matter. Because the facts and legal arguments were presented adequately in the briefs and record, and in view of the conclusions reached herein, oral argument is deemed unnecessary.

### I. FACTS

Plaintiff, H.B. Zachry Company, entered into a contract with defendant, through the Bureau of Prisons (Bureau), to construct the Federal Correctional Institution at Three Rivers, Texas, on May 18, 1989. The $42,130,000.00 contract included installation of steel roof decking for the correctional institution. Specifically, the "materi-

als" subpart of the contract specifications called for "Steel Sheet, Roof Deck: 'Painted', [sic] complying with ASTM A 611, Grade C." Specifications Section 05310, Part 2—Products, subpart 2.1(A). This subpart did not indicate whether the steel sheet for the roof deck should be galvanized although the same subpart did list a zinc coating for other steel materials. However, the subpart addressing the "fabrication" of the roof decking provided that plaintiff was to "[f]orm deck units from galvanized sheet in lengths to span 3 or more support spacing, with flush, telescoped or nested 2–inch laps at ends and interlocking or nested side laps, unless otherwise shown." *Id.* at 2.3(A). This subpart also indicated that the "[d]eck shall be shop painted with one coat of factory baked-on primer paint." *Id.* at 2.3(D). The contract further provided for field painting of the roof deck: "After erection, scarred areas on both sides of the deck, including welds, weld scars, bruises, and rust spots, shall be wire brushed and touch-up painted." Specifications Section 05310, Part 3—Execution, subpart 3.2(G).

Plaintiff began receiving shipments of the metal roof deck in September 1989. The roof decking was prime painted, but not galvanized. Problems with rust were discovered with the original shipment, but the shipment was accepted and installed by plaintiff upon the assurance of its supplier that the rust problems could be treated on site with field and finish painting as permitted by the specifications. In early January 1990, plaintiff and Bureau representatives had a series of meetings which prompted letters and memoranda between Bureau representatives, the Bureau's architect/engineering firm, plaintiff and plaintiff's suppliers about whether the contract called for painted, galvanized roofing material.

On January 17, 1990, defendant's contracting officer issued a nonconformance notice for the metal roof decking to plaintiff. The notice stated that the metal roof decking being installed by plaintiff did not conform to the contract specifications because it was not galvanized as required by subpart 2.3(A) of Section 05310. The notice further provided that if plaintiff continued to install the nonconforming roof deck, it would be doing so at its own risk. This notice quoted Federal Acquisition Regulation (FAR) clause 52.246–12(f), which states: "The Contractor shall, without charge, replace or correct work found by the Government not to conform to contract requirements, unless in the public interest the Government consents to accept the work with an appropriate adjustment in the contract price." Upon receipt of this notice plaintiff stopped installing the allegedly nonconforming roof deck. However, by this time a major portion of the roof deck had already been installed.

In order to resolve the stalemate and to avoid having to replace all the deck with decking formed from galvanized sheets, plaintiff developed a proposal for remedial action. This proposal included field painting of the steel sheet with a specialized coating and a credit for the deletion of the "zinc coating called for in the contract." On February 12, 1990, the parties agreed to plaintiff's proposal for corrective action with a corresponding credit of $30,000.00 to the contract price. Plaintiff memorialized the agreement for corrective action, "for the work found to be non-conforming," and the $30,000.00 credit on February 13, 1990. Defendant later issued a unilateral modification to the contract to that effect on February 20, 1990. Plaintiff indicated by letter dated February 21, 1990, that it would comply with the contract modification, but that its position was that the roof decking materials it provided complied with the contract specifications. In this letter plaintiff reserved its right to resolve this dispute, "including but not limited to any time or price adjustment for costs related to delay."

On December 6, 1990, plaintiff submitted a request for equitable adjustment of $472,162.49 and a nine day extension of contract time to the contracting officer. Plaintiff amended its monetary request on December 31, 1990, to $501,398.33 retaining its request for the nine day extension. On February 28, 1991, the contracting officer denied plaintiff's request. Plaintiff filed this complaint on November 22, 1991

alleging that defendant's contention that the specifications called for galvanized steel roof decking was erroneous and that the unilateral modification defendant required it to perform as a result caused it delay and added expense in the amounts requested. Defendant, in its motion for summary judgement, maintained that the specifications clearly called for galvanized steel, but that if the specifications did contain any ambiguity regarding galvanization, it was patent. As such, defendant maintained that plaintiff must be held accountable for not attempting to clarify any patently ambiguous contractual provisions.

## II. DISCUSSION

### A. Summary Judgment Standard

 Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to summary judgment as a matter of law. RCFC 56(c); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir. 1987). Genuine issues of material fact are those that would change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A determination of which facts might affect the outcome of the litigation depends on the substantive law to be applied in the case. *Id.* at 248, 106 S.Ct. at 2510; *Monarch Painting Corp. v. United States*, 16 Cl.Ct. 280, 285 (1989). Contract interpretation is a question of law and, as such, may be resolved appropriately by summary judgment. *P.J. Maffei Bldg. Wrecking Corp. v. United States*, 732 F.2d 913, 916 (Fed. Cir.1984); *Fry Communications, Inc. v. United States*, 22 Cl.Ct. 497, 503 (1991).

Plaintiff argued that although the court can interpret contract language as a matter of law many of the underlying determinations necessary for that interpretation are matters of fact. While this may be true when the dispute over factual matters is material to the disposition of the case, see, e.g., *D & S Universal Mining Co. v. United States*, 4 Cl.Ct. 94, 96–97 (1983), which held that interpretation of the contract term "reasonable" required factual deter-

minations, the issues of fact which plaintiff disputes are not material to the outcome of this case. Only disputes over facts that might significantly affect the outcome of the case under the governing law preclude an entry of summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Gresham, Smith & Partners v. United States*, 24 Cl.Ct. 796, 800 (1991). As a result, summary judgement is appropriate in this case.

### B. Contract Interpretation

 The court's first responsibility in construing the disputed contractual provision is to ascertain analytically whether an ambiguity exists. *Gresham, Smith & Partners*, 24 Cl.Ct. at 802. A contract is ambiguous only if it is susceptible to differing interpretations, each consistent with the contract's language. *Sun Shipbuilding & Dry Dock Co. v. United States*, 393 F.2d 807, 815–16, 183 Ct.Cl. 358 (1968); *Gresham, Smith & Partners*, 24 Cl.Ct. at 802. The ordinary meaning of a contract's language governs. *American Science & Eng'g, Inc. v. United States*, 663 F.2d 82, 88, 229 Ct.Cl. 47 (1981). An interpretation that gives meaning to all parts of the contract is preferable to one which renders provisions in the contract meaningless or superfluous. *Fortec Constructors v. United States*, 760 F.2d 1288, 1292 (Fed.Cir. 1985) (citing *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1555 (Fed. Cir.1983)).

 Plaintiff contended that because subpart 2.1(A) of the "materials" section of the contract specifications called for painted steel sheet and did not refer to galvanization, as the specifications did for other materials in that section, the contract only required non-galvanized, painted steel. While subpart 2.1(A), standing alone, might support plaintiff's position, "contract clauses cannot be interpreted in isolation." *Gaston & Assoc., Inc. v. United States*, 27 Fed.Cl. 243, 249 n. 7 (1992) (citing *Unicon Management Corp. v. United States*, 375 F.2d 804, 806, 179 Ct.Cl. 534 (1967)). Plaintiff's interpretation ignores the direct requirement of subpart 2.3(A) that the roof

deck be formed from galvanized sheet. All parts of the contract must be read together with the object of finding unity and harmony between them. *Unicon Management Corp. v. United States*, 375 F.2d 804, 806, 179 Ct.Cl. 534 (1967); *Boehm v. United States*, 22 Cl.Ct. 511, 516 (1991).

 Plaintiff, through a clever use of ellipses, contended that the two clauses were harmonious because subpart 2.3(A) only required it to "[f]orm deck units from galvanized sheet ... unless otherwise shown." However, plaintiff's tortured interpretation of subpart 2.3(A) would render the prepositional phrase regarding galvanization meaningless. Plaintiff would have the court erroneously find that the contract did not call for *any* of the roof decking to be galvanized. An interpretation which renders a portion of the contract meaningless should be rejected. *United Pac. Ins. Co. v. United States*, 497 F.2d 1402, 1405, 204 Ct.Cl. 686, 938 (1974); *Boehm*, 22 Cl.Ct. at 516; RESTATEMENT (SECOND) OF CONTRACTS § 203(a) (1981). Plaintiff's artifice can not pervert the clear and unambiguous meaning of subpart 2.3(A) and will not be sanctioned by the court. Accordingly, when all parts of the contract are read together and harmonized, the contract requires the roof deck to be formed from galvanized steel and factory painted.

Plaintiff also contended, through affidavit, that galvanized steel is not normally painted and that ASTM A 611, Grade C steel is not normally galvanized. While the court does not find plaintiff's affidavit particularly persuasive on these issues,[1] if plaintiff could establish this contention at trial, defendant's position that the contract unambiguously required the roof deck to be formed from painted, galvanized steel would fail because the conflicting provisions could not be harmonized. Plaintiff argued that because this is a disputed issue of fact, summary judgment is not proper. However, as discussed below, determination of this factual issue is not material to the disposition of this case.

### C. Patent Ambiguity

 Assuming *arguendo* that galvanized steel is not normally painted and that the steel specified is not normally galvanized, the contract is patently ambiguous on its face. The existence of a patent ambiguity is a question of contract interpretation which is decided on a case-by-case basis. *Interstate Gen. Gov't Contractors v. Stone*, 980 F.2d 1433, 1435 (Fed.Cir. 1992). It is well settled in this court that "an ambiguity is patent when there is 'an obvious error in drafting, a gross discrepancy, or an inadvertent but glaring gap.' " *Fry Communications*, 22 Cl.Ct. at 504 (quoting *WPC Enter., Inc. v. United States*, 323 F.2d 874, 876, 163 Ct.Cl. 1 (1963)). As discussed above, the court finds that subpart 2.3(A) of the contract specifications clearly and unambiguously required that the roof deck be formed from galvanized sheets. Nothing in the contract specifications permitted plaintiff's suppliers to ignore or vary this express contract requirement. It is undisputed that the contract required the roof deck to be painted and that the contract called for ASTM A 611, Grade C steel. Assuming plaintiff's contention regarding galvanization is true, this is a glaring discrepancy in the specifications which should have been apparent to a reasonably prudent contractor. *See John C. Grimberg Co. v. United States*, 7 Cl.Ct. 452, 456, *aff'd*, 785 F.2d 325 (Fed.Cir.1985). As a result, under plaintiff's version of the facts, the contract is patently ambiguous.

 The existence of a patent ambiguity in a contract requires the contractor to inquire of the contracting officer as to the true meaning of the contract before submitting a bid. *Interstate Gen. Gov't Contractors*, 980 F.2d at 1435. Plaintiff did not do so. "It is not the contractor's actual knowledge, but the obviousness of the inconsistency that imposes the duty to inquire." *Bayou Land & Marine Contractors v. United States*, 23 Cl.Ct. 764, 773 (1991) (citing *Chris Berg, Inc. v. United States*, 455 F.2d 1037, 1045, 197 Ct.Cl. 503 (1972)). This duty of inquiry arises regard-

---

1. *See Bayou Land & Marine Contractors, Inc. v. United States*, 23 Cl.Ct. 764, 766 (1991), which

discusses a similar contract requirement for painted, galvanized steel.

less of the reasonableness of the contractor's interpretation of the contract. *Interstate Gen. Gov't Contractors*, 980 F.2d at 1434–35. As a result, plaintiff could not prevail in this case even if its contention regarding galvanization were true. Accordingly, the court finds that plaintiff's claims regarding galvanization do not raise any genuine issues of material fact that could in any way alter the outcome of this case.

## III. CONCLUSION

For the reasons stated above, the court grants defendant's motion for summary judgement. The complaint is dismissed. Costs to defendant.

**IT IS SO ORDERED.**